UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: } | Case No. 10-08923-BKT |
| } | |
| JOSE A. ALBINO OTERO } | |
| } | Chapter 13 |
| } | |
| Debtor. } | |
| } | |

### SECOND MOTION TO VALUE COLLATERAL
### AND TO DETERMINE SECURED STATUS

The Debtor, JOSE A. ALBINO OTERO, by and through undersigned counsel, pursuant to 11 U.S.C. § 506, Federal Bankruptcy Rule of Procedure 3012, Local Bankruptcy Rules 9013 and 9014 and applicable decisional case law; hereby files this Motion to Value Collateral and to Determine Secured Status, and in support thereof further state as follows:

#### I.  General Allegations

1. BAC Home Loans Servicing ("BAC Home Loans"), under Loan Number XXXXXX7409, alleges to "own" and "hold", as said terms are defined under Article 3 of the Uniform Commercial Code, an indebtedness against Debtor in the amount of $205,791.00. Said indebtedness is allegedly secured by real property pursuant to a first mortgage lien recorded in the official records of Hillsborough County, Florida.

2. The real property is situated at **817 N. Kingsway Rd., Seffner, Florida 33584** (the "Real Property") and is more particularly described as:

**Lot 1, Block 1 Section 35 of Township 28 South Range 20 East.**

3. The subject matter Real Property is not Debtor's primary residence; in fact, it is an investment property which is central to Debtor's finances and Debtor's reorganization efforts. Accordingly, the Real Property is necessary for the successful reorganization of the Debtor.

4. The undersigned has reviewed the docket and claims register and as of December 21, 2010, BAC Home Loans has not filed a Proof of Claim in this case. In the event that a timely Proof of Claim is filed, Debtor anticipates that BAC Home Loans will file a Proof of Claim in the amount of $205,791.00.

5. At the time of the filing of this case, the value of the Real Property was $58,000.00 as determined by the Appraisal dated October 12, 2010, performed and signed by Mr. Dario Ruiz, a certified Florida appraiser operating under license number FL-RD5968. A copy of said Appraisal is attached hereto as Exhibit "A." Furthermore, Debtor estimates that should the subject real property be liquidated, the net proceeds to unsecured creditors after payment of the trustee fee would be $00.00.

6. Accordingly, the purpose of this Motion to Value Collateral and Determine the Secured Status is to: a. pursuant to Bankruptcy Rule 3012, value the subject matter collateral; and b. pursuant to 11 U.S.C. § 506 have the Court enter an Order fixing the value of the subject property as of the Petition Date, and to determine the allowed secured claim and allowed unsecured claim portions of any Proof of Claim that may be timely submitted by BAC Home Loans.

## II. Statutory And Decisional Case Law Authority

7. Section 506 of the Bankruptcy Code allows a debtor to value a claim to determine whether said claim is secured or unsecured. 11 U.S.C. § 506. Specifically, subsection 506(a) provides that collateral, which secures an allowed claim, may be valued to determine what portion of the claim is secured and what portion of said claim is unsecured. *Id.*

8. Additionally, Federal Rule of Bankruptcy Procedure 3012 provides the procedural mechanism to determine collateral valuation issues raised pursuant to subsection 506(a). *In re Lafata*, 483 F.3d 13, 22 (1st Cir. 2007). Bankruptcy Rule 3012 states:

> "The court may determine the value of a claim secured by a lien on property in which the estate has an interest **on motion of any party in interest** and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct."

Fed. R. Bankr. P. 3012.

The Official Committee Notes to Section 506(d) of the Bankruptcy Code clarifies that valuation of collateral, as opposed to the validity, priority or extent of the collateral, is appropriately addressed by motion pursuant to Bankruptcy Rule 3012. Specifically, the Official Committee Notes to Section 506(d) state:

> "An adversary proceeding is commenced when the validity, priority, or extent of a lien is at issue as prescribed by Rule 7011. That proceeding is relevant to the basis of the lien itself *while valuation under Rule 3012 would be for the purposes indicated above* (e.g., to determine the issue of adequate protection, impairment, or *treatment of a claim in a plan.*)"

11 U.S.C. § 506(d) Advisory Committee's Notes.

9. In *In re Lafata*, the 1st Circuit Court of Appeals opined on the procedural appropriateness of Bankruptcy Rule 3012 with respect to Section 506(a) valuation issues. *In re Lafata*, 483 F.3d 13, 22 (1st Cir. 2007). In that case, Debtor sought to bifurcate the secured lender's claim, Eastern Bank, into secured and unsecured portions. *Id.* at 17. To do so, Debtor filed a motion for determination of secured status under 11 U.S.C. § 506. *Id.* Debtor's motion for determination of secured status was filed pursuant to Bankruptcy Rule 3012. *Id.* at 22. Debtor then proposed a Chapter 13 Plan with a secured claim of $18,500, the appraised value of the subject matter collateral and a remainder of $131,500 as an unsecured claim. *Id.* At confirmation, the secured lender objected to the Plan. *Id.* Amongst other reasons, Eastern Bank claimed that it did not received adequate notice of the 11 U.S.C. § 506 because Debtor failed to abide by the appropriate procedural mechanisms. *Id.* The 1st Circuit disagreed. *Id.* The Court cited Bankruptcy Rule 3012 as the appropriate mechanism for such valuations hearings, and further held that as applicable to the facts of the case, there was "no violation of Rule 3012." *Id.*

10. Similarly, courts of other jurisdictions have determined that "[T]he majority of courts hold that the appropriate procedure for lien avoidance under Section 506 is by motion because lien avoidance is the inevitable byproduct of valuing a claim, which is accomplished by motion pursuant to Bankruptcy Rule 3012. No further proceeding is required." *In re Sadala*, 294 B.R. 180, 183 (Bankr. M. Dist. Fla. 2003)(collects and examines the seminal cases with respect to the procedural mechanisms for Section 506 valuation issues).

11. Similar to the case of *In Re LaFata*, in the case at bar, Debtor seeks only to value the subject matter Real Property which serves as collateral to the secured lender's claim. Here, as in *In Re LaFata*, Debtor proceeds pursuant to Bankruptcy Rule 3012, which the 1st Circuit has implicitly upheld as the appropriate procedural mechanism for cases such as the one at bar[1]. Further, Debtor has proposed a Chapter 13 Plan which bifurcates the secured lender's claim into secured and unsecured portions as permitted by Section 506 of the Bankruptcy Code. Finally, much like *In Re LaFata*, Debtor's valuation allegations are supported by an appraisal which is attached hereto.

12. At this juncture, Debtor does not question the validity, priority, or extent of any lien or Proof of Claim which may be timely filed by BAC Home Loan Services. Accordingly, this Motion and the allegations which are set forth herein do not trigger the procedural requirements and heighten notice provisions of Bankruptcy Rule 7001.

---

[1] Debtor concedes that *In re LaFata* did not specifically address the appropriateness of Bankruptcy Rule 3012 as compared to Bankruptcy Rule 7001 in the context of valuation motions. The Court, however, did consider the use of Bankruptcy Rule 3012 in the valuation context. In the humble opinion of the undersigned, the Court's rejection of the secured lender's objection serves to implicitly uphold the use of this procedural mechanism as is hereby sought by this motion.

**WHEREFORE**, the Debtor, JOSE A. ALBINO OTERO, respectfully request this Honorable Court enter an Order as follows:

(a) Determining the value of the Property to be $58,000.00;

(b) Determining that the secured claim of BAC HOME LOAN is $58,000.00;

(c) Determining that the unsecured deficiency claim of BAC HOME LOAN is $147,791; and

(d) Granting any such further relief that this Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 21st day of December, 2010.

/s/ Jesus E. Batista, Esq.
JESUS E. BATISTA
USDC. NO. 227014
BARTOLONE & BATISTA, LLP
530 Ave. De La Constitución
San Juan, P.R. 00901
Telephone: (787) 289-8772
Facsimile: (787) 289-8779
E-mail: jeb@bartolonelaw.com.

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | } | Case No. 10-08923-BKT |
| | } | |
| JOSE A. ALBINO OTERO | } | |
| | } | Chapter 13 |
| | } | |
| Debtors. | } | |
| | } | |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the Motion to Value Collateral and to Determine Secured Status was served via the CM/ECF system and United States Mail, first class postage prepaid, on: Jose A. Albino Otero, Urb Levittown 5TA Sec Box 11 Calle Dr. Francisco Rendon, Toa Baja, PR 00949; **Mr. Brian T. Moynihan, Chief Executive Officer of Bank of America, 100 North Tryon Street, Charlotte, NC 28255; Lourdes W. Clerge, Esq., Law Offices of David J. Stern, P.A., 900 South Pine Island Rd., Suite 400, Plantation, Florida 33324-3920**; the United States Trustee, Ochoa Building, 500 Tanca Street Suite 301, San Juan PR 00901; and Alejandro Oliveras Rivera, Chapter 13 Trustee, P.O. Box 9024062, San Juan, PR 00902, this 21st day of December, 2010.

/s/ Jesus E. Batista, Esq.
JESUS E. BATISTA
USDC. NO. 227014
BARTOLONE & BATISTA, LLP
530 Ave. De La Constitución
San Juan, P.R. 00901
Telephone: (787) 289-8772
Facsimile: (787) 289-8779
E-mail: jeb@bartolonelaw.com

```
Label Matrix for local noticing          GE MONEY BANK (SAMS CLUB)                 US Bankruptcy Court District of P.R.
0104-3                                   C/O RECOVERY MANAGEMENT SYSTEMS CORP      U.S. Post Office and Courthouse Building
Case 10-08923-BKT13                      25 SE 2ND AVE SUITE 1120                  300 Recinto Sur Street, Room 109
District of Puerto Rico                  MIAMI, FL 33131-1605                      San Juan, PR 00901-1964
Old San Juan
Tue Dec 21 19:36:03 AST 2010

American Infosource Lp As Agent for      BANCO POPULAR DE PR                       Bac Home Loans Servici
T Mobile/T-Mobile USA Inc                BANKRUPTCY DEPARTMENT                     450 American St
PO Box 248848                            PO BOX 366818                             Simi Valley, CA 93065-6285
Oklahoma City, OK  73124-8848            SAN JUAN PUERTO RICO 00936-6818


Banco Popular De Puert                   Coop Arecibo                              Matthew T. Shapanka
209 Munoz Rivera Ave                     Box 1056                                  Law Offices of David J Stern
San Juan, PR 00918-1000                  Arecibo, PR 00613-1056                    900 South Pine Island Rd. Ste 400
                                                                                   Fort Lauderdale, FL 33324-3920


Thd/Cbsd                                 ALEJANDRO OLIVERAS RIVERA                 JESUS ENRIQUE BATISTA SANCHEZ
Po Box 6497                              ALEJANDRO OLIVERAS, CHAPTER 13 TRUS       BARTOLONE & BATISTA LLP
Sioux Falls, SD 57117-6497               PO BOX 9024062                            ATRIUM BUSINESS CENTER
                                         SAN JUAN, PR 00902-4062                   530 AVE DE LA CONSTITUCION
                                                                                   SAN JUAN, PR 00901-2304


JOSE A ALBINO OTERO                      MONSITA LECAROZ ARRIBAS                   End of Label Matrix
URB LEVITTOWN 5TA SECCION                OFFICE OF THE US TRUSTEE (UST)            Mailable recipients    13
BX 11 CALLE DR FRANCISCO RENDON          OCHOA BUILDING                            Bypassed recipients     0
TOA BAJA, PR 00949                       500 TANCA STREET  SUITE 301               Total                  13
                                         SAN JUAN, PR 00901-1938
```

# EXHIBIT A

File No. DR1010007

# Exterior-Only Inspection Residential Appraisal Report
File # DR1010007

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| Field | Value |
|---|---|
| Property Address | 817 N Kingsway Road |
| City | Seffner |
| State | FL |
| Zip Code | 33584 |
| Borrower | For Personal Use |
| Owner of Public Record | For Personal Use |
| County | Hillsborough |
| Legal Description | SHANGRI LA SUBDIVISION UNIT NO 1 LOT 5 BLK 1 |
| Assessor's Parcel # | U-35-28-20-26F-000001-00005.0 |
| Tax Year | 2009 |
| R.E. Taxes $ | 1,503.32 |
| Neighborhood Name | Seffner |
| Map Reference | 35-28-20 |
| Census Tract | |
| Occupant | ☐ Owner ☐ Tenant ☒ Vacant |
| Special Assessments $ | |
| PUD / HOA $ | ☐ per year ☐ per month |
| Property Rights Appraised | ☒ Fee Simple ☐ Leasehold ☐ Other (describe) |
| Assignment Type | ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) For personal use. |
| Lender/Client | N/A |
| Address | N/A |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s). N/A

## CONTRACT

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. N/A

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? ☒ Yes ☐ No    Data Source(s) Public Records
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No
If Yes, report the total dollar amount and describe the items to be paid. N/A

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☐ Stable ☒ Declining | PRICE / AGE | One-Unit 80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☐ In Balance ☒ Over Supply | $ (000) / (yrs) | 2-4 Unit 5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 29 Low 12 | Multi-Family 5 % |
| | | 165 High 63 | Commercial 10 % |
| | | 50-75 Pred. 30-40 | Other % |

Neighborhood Boundaries: The subject property is located south of SR-92 & west of Parsons Avenue in Hillsborough County. There are SFR nd commercial property located Parsons Ave.

Neighborhood Description: The subject is a concrete block home constructed in 1976 and is located on a 9,384 Sq Ft Lot MOL. The majority of homes in the neighborhood are similar in design, age, and appeal, containing between 800-2000 Sq.Ft. +/- of living area with 2-4 bedrooms. There were no observed unfavorable factors affecting marketability noted. Schools, shopping and employment centers are located nearby.

Market Conditions (including support for the above conclusions): General market conditions in the subject neighborhood appear to be declining. Special discounts, unusual buydowns, and other special concessions have been observed. Supply and demand appear to be in balance and property values are unstable with moderate to drastic decreases in value observed.

## SITE

| Field | Value |
|---|---|
| Dimensions | 75 X 105 |
| Area | 7,875 Sq.Ft.+/- |
| Shape | Rectangular |
| View | Residential |
| Specific Zoning Classification | RSC-6 |
| Zoning Description | Res Class 2 |
| Zoning Compliance | ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | | N/a | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone X    FEMA Map # 12057C0245H    FEMA Map Date 08/28/2008
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

## IMPROVEMENTS

Source(s) Used for Physical Characteristics of Property: ☒ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner ☒ Other (describe) Physical Inspection.
Data Source for Gross Living Area: Public records / Inspection.

| General Description | General Description | Heating/Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | ☒ FWA ☐ HWBB | Fireplace(s) # | ☐ None |
| # of Stories One | ☐ Full Basement ☐ Finished | ☐ Radiant | Woodstove(s) # | ☒ Driveway # of Cars 2 |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | ☐ Partial Basement ☐ Finished | ☐ Other | ☒ Patio/Deck Open | Driveway Surface |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls CB Stucco | Fuel | ☒ Porch CovEntry | ☐ Garage # of Cars |
| Design (Style) Ranch / Avg | Roof Surface CompoSh/Avg | ☒ Central Air Conditioning | ☐ Pool | ☒ Carport # of Cars 1 |
| Year Built 1976 | Gutters & Downspouts N/A | ☐ Individual | ☐ Fence | ☒ Attached ☐ Detached |
| Effective Age (Yrs) 17 | Window Type Al SH/Avg | ☐ Other | ☐ Other | ☐ Built-in |

Appliances ☐ Refrigerator ☐ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains: 5 Rooms    3 Bedrooms    1.5 Bath(s)    1,194 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.) Subject has a covered entry and an open patio.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc. The subject property appears to be in average condition. No functional or external obsolescence were noted at the time of the exterior inspection. Maintenance and care are keeping up with buyer expectations for the price range.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No
If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.

# Exterior-Only Inspection Residential Appraisal Report
File # DR1010007

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| There are | 34 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 29,000 | | | | to $ 225,000 | . |
| There are | 41 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 32,000 | | | | to $ 205,000 | . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 817 N Kingsway Road Seffner, FL 33584 | 5260 Highway 579 Seffner, FL 33584 | | 2303 Merrily Circle N Seffner, FL 33584 | | 821 Walnut Drive Seffner, FL 33584 | |
| Proximity to Subject | | Under One Mile | | Under One Mile | | Under One Mile | |
| Sale Price | $ N/A | | $ 41,000 | | $ 64,500 | | $ 78,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 38.53 sq.ft. | | $ 56.38 sq.ft. | | $ 61.66 sq.ft. | |
| Data Source(s) | | Public Records / MLS DOM: 10 | | Public Records / MLS DOM: 1 | | Public Records / MLS DOM: 790 | |
| Verification Source(s) | | Public Records / MLS | | Public Records / MLS | | Public Records / MLS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | N/A N/A | | N/A N/A | | N/A N/A | |
| Date of Sale/Time | | 10/13/2010 | | 12/31/2009 | | 05/21/2010 | |
| Location | High Traffic | High Traffic | | Average | -5,000 | Average | -5,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 7,875 Sq.Ft.+/- | 7,291 Sq.Ft+/- | | 11,530 Sq.Ft+/- | -8,000 | 8,376 Sq.Ft+/- | |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Ranch / Avg | Ranch / Avg | | Ranch / Avg | | Ranch / Avg | |
| Quality of Construction | ConcreteBlk/Av | ConcreteBlk/Av | | ConcreteBlk/Av | | ConcreteBlk/Av | |
| Actual Age | 34 years | 23 years | -1,100 | 35 years | | 37 years | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade Room Count | Total 5 / Bdrms. 3 / Baths 1.5 | Total 5 / Bdrms. 3 / Baths 2 | -1,500 | Total 5 / Bdrms. 3 / Baths 2 | -1,500 | Total 5 / Bdrms. 3 / Baths 2.5 | -3,000 |
| Gross Living Area | 1,194 sq.ft. | 1,064 sq.ft. | +1,300 | 1,144 sq.ft. | +500 | 1,265 sq.ft. | |
| Basement & Finished Rooms Below Grade | None N/A | None N/A | | None N/A | | None N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Average | Average | | Average | | Average | |
| Energy Efficient Items | Avergage | Avergage | | Avergage | | Avergage | |
| Garage/Carport | 1 Car Carport | 1 Car Garage | -2,500 | 1 Car Garage | -2,500 | None | +2,000 |
| Porch/Patio/Deck | Open | Open | | Open | | Open | |
| Net Adjustment (Total) | | [ ] + [X] - | $ -3,800 | [ ] + [X] - | $ -16,500 | [ ] + [X] - | $ -6,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 9.3 % Gross Adj. 15.6 % | $ 37,200 | Net Adj. 25.6 % Gross Adj. 27.1 % | $ 48,000 | Net Adj. 7.7 % Gross Adj. 12.8 % | $ 72,000 |

I [ ] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)
My research [ ] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | None within the last | 5/09 $100 Unqual Sale | 12/09 $61,000 Unqual Sale | None within the last |
| Price of Prior Sale/Transfer | 36 Months | OBP: 19293/0276 | OBP: 19659/1306 | 36 Months |
| Data Source(s) | Public Records | Public Records | Public Records | Public Records |
| Effective Date of Data Source(s) | 10/08/2010 | 10/08/2010 | 10/08/2010 | 10/08/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales  The subject and the comparable sales appear to be arms length
transactions with no unusual concessions. Comparable sales #2 and #3 were adjusted for traffic due to the subject property's high traffic location.

Summary of Sales Comparison Approach  Sales presented are in the same market area, have similar amenities and are considered to be the most
comparable to the subject at the time of visual analysis and are considered to be the best guidelines for market value. Sales were adjusted for
age, GLA and amenities.

Indicated Value by Sales Comparison Approach $ 58,000
Indicated Value by: Sales Comparison Approach $ 58,000   Cost Approach (if developed) $ N/A   Income Approach (if developed) $ N/A

This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 58,000 , as of 10/12/2010 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055 March 2005                   Page 2 of 6                   Fannie Mae Form 2055 March 2005

Form 2055 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Exterior-Only Inspection Residential Appraisal Report File # DR1010007

## ADDITIONAL COMMENTS

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   N/A

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ |
|---|---|---|---|---|
| Source of cost data  N/A | DWELLING | Sq.Ft. @ $ | | =$ |
| Quality rating from cost service    Effective date of cost data | | Sq.Ft. @ $ | | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | =$ |
| | Garage/Carport | Sq.Ft. @ $ | | =$ |
| | Total Estimate of Cost-New | | | =$ |
| | Less    Physical | Functional | External | |
| | Depreciation | | | =$( ) |
| | Depreciated Cost of Improvements | | | =$ |
| | "As-is" Value of Site Improvements | | | =$ |
| Estimated Remaining Economic Life (HUD and VA only)    Years | INDICATED VALUE BY COST APPROACH | | | =$ |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $      X  Gross Rent Multiplier       = $       Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases     Total number of units     Total number of units sold
Total number of units rented     Total number of units for sale     Data source(s)
Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes ☐ No  If Yes, date of conversion
Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source(s)
Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Exterior-Only Inspection Residential Appraisal Report    File # DR1010007

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Exterior-Only Inspection Residential Appraisal Report  File # DR1010007

APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

Exterior-Only Inspection Residential Appraisal Report  File # DR1010007

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Dario Ruiz | Name |
| Company Name  State Certified Residential Real Estate Appraiser | Company Name |
| Company Address  8812 Audrey Lane, Tampa, FL 33615 | Company Address |
| Telephone Number  813-290-7908 | Telephone Number |
| Email Address  dariodapprsr@aol.com | Email Address |
| Date of Signature and Report  October 12, 2010 | Date of Signature |
| Effective Date of Appraisal  10/12/2010 | State Certification # |
| State Certification #  FL-RD5968 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State  FL | |
| Expiration Date of Certification or License  11/30/2010 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
| 817 N Kingsway Road | ☐ Did inspect exterior of subject property from street |
| Seffner, FL 33584 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $  58,000 | COMPARABLE SALES |
| LENDER/CLIENT | |
| Name  For Personal Use | ☐ Did not inspect exterior of comparable sales from street |
| Company Name  N/A | ☐ Did inspect exterior of comparable sales from street |
| Company Address  N/A | Date of Inspection |
| Email Address | |

## Subject Photo Page

| Borrower/Client | For Personal Use | | | |
|---|---|---|---|---|
| Property Address | 817 N Kingsway Road | | | |
| City | Seffner | County Hillsborough | State FL | Zip Code 33584 |
| Client | | | | |



**Subject Front**

817 N Kingsway Road
Sales Price          N/A
Gross Living Area   1,194
Total Rooms         5
Total Bedrooms      3
Total Bathrooms     1.5
Location            High Traffic
View                Residential
Site                7,875 Sq.Ft.+/-
Quality             ConcreteBlk/Av
Age                 34 years



**Subject Rear**



**Subject Street**

## Comparable Photo Page

| Borrower/Client | For Personal Use | | | | |
|---|---|---|---|---|---|
| Property Address | 817 N Kingsway Road | | | | |
| City | Seffner | County | Hillsborough | State FL | Zip Code 33584 |
| Client | | | | | |



### Comparable 1
| | |
|---|---|
| 5260 Highway 579 | |
| Prox. to Subject | Under One Mile |
| Sales Price | 41,000 |
| Gross Living Area | 1,064 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | High Traffic |
| View | Residential |
| Site | 7,291 Sq.Ft+/- |
| Quality | ConcreteBlk/Av |
| Age | 23 years |



### Comparable 2
| | |
|---|---|
| 2303 Merrily Circle N | |
| Prox. to Subject | Under One Mile |
| Sales Price | 64,500 |
| Gross Living Area | 1,144 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Average |
| View | Residential |
| Site | 11,530 Sq.Ft+/- |
| Quality | ConcreteBlk/Av |
| Age | 35 years |



### Comparable 3
| | |
|---|---|
| 821 Walnut Drive | |
| Prox. to Subject | Under One Mile |
| Sales Price | 78,000 |
| Gross Living Area | 1,265 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Average |
| View | Residential |
| Site | 8,376 Sq.Ft+/- |
| Quality | ConcreteBlk/Av |
| Age | 37 years |